Harry A. Safarian (SBN 204106)
THE SAFARIAN FIRM, APC
3150 Montrose Avenue
Glendale, California 91214
Telephone:  (818) 334-8528
Facsimile:   (818) 334-8107
hs@safarianfirm.com;

Attorneys for Defendants, DIVERSIFIED HOLDINGS, LLC d/b/a
REAL ESTATE CONNECTION

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRANCISCO GARCIA QUIROZ, FABIOLA VILLALOBOS, et al.<br><br>Plaintiffs,<br><br>v.<br><br>DIVERSIFIED HOLDINGS, LLC and REAL ESTATE CONNECTION, a business form unknown, and DOES 1 through 10, Inclusive,<br><br>Defendants. | Case No. 2:16-cv-03918 FMO(Ex)<br><br>**DISPUTED JURY INSTRUCTIONS**<br><br>Judge: Hon. Fernando M. Olguin<br>Courtroom No. 22 |

The parties hereby submit, pursuant to Federal Rules of Civil Procedure section 51, the following *disputed* instructions to be read to the jury at trial:

///
///
///
///

1

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## INSTRUCTION NO. 1

A landlord has an affirmative duty to curb disruptive or abusive conduct by tenants, and failure to do so constitutes breach the covenant of quiet enjoyment running in favor of other tenants at the premises.

**Authority:** See *Andrews v. Mobile Aire Estates* (2005) 125 Cal.App.4th 578, 593 (whether landlord breached covenant of quiet enjoyment by failing to curb conduct of "nuisance" tenant; see also, *Davis v. Gomez* (1989) 207 Cal.App.3d 1401, 1404-1405 (tenant's behavior was a "nuisance" interfering with other tenants' "quiet enjoyment"). Mobile home park's contractual duty as landlord to preserve quiet enjoyment of premises by tenants who complained of troublesome neighbor was implied in tenants' lease, as it was in all leases, and imposed explicitly by Mobilehome Residency Law (MRL). *Andrews v. Mobile Aire Estates* (2005) 125 Cal.App.4th 578 [22 Cal.Rptr.3d 832]

## **Plaintiffs' Objection to this Jury Instruction**:

There is no cause of action for beach of the covenant of quiet enjoyment. To this end, the instruction is unnecessary.

As the court in *Mathews v. Arrow Wood, LLC.,* 2009 WL 8659593 (C.D. Cal. 2009), aptly pointed out, the desire to protect children cannot become the basis for overly-broad protective rules that prevent all children from playing. The *Matthews* court held:

"Concerns that children will get hurt while playing outside, be it nicks, scratches, bumps or bruises, have been concerns dogging parents since the dawn of time. Were such ever-present, generalized concerns deemed sufficient in and of themselves to

2

justify outdoor use restrictions to an apartment complex, there would be little place left that such a rule would not be considered valid.   In short, the mantra of child safety cannot and is not sufficient to justify a restriction absent some showing that the particular concern captured by this rationale has a concrete connection to the particular area and activity sought to be restricted." *Id.* at 14-15.

Likewise, in *Bischoff v. Brittain*, *Bischoff v. Brittain*, 183 F. Supp. 3d 1080 (E.D. CA 2016), the court rejected an argument from the landlord that noise and liability concerns justified rules that limited the right of children to use common areas. The Court held:

" In their opposition, defendants contend the guidelines are justified to protect the safety and well-being of young children, to limit noise and disturbances to other residents, and to protect themselves from liability if the children are injured. Of these asserted justifications, only the first is permissible under the *Community House* standard; the other two justifications do not respond to legitimate safety concerns, and defendants have not shown that they otherwise benefit families with young children."

As the court in *Llanos v. Coehlo*, 24 F.Supp.2d 1052, 1060 (E.D. Cal. 1998), pointed out, "[A]s a general rule, safety judgments are for informed parents to make, not landlords."

The *Llanos* Court also pointed out that disparate treatment claims could be brought separately from disparate impact claims.   The Court held:

"FHA discrimination claims are analyzed in the same manner as Title VII discrimination claims. Gamble v. City of Escondido, 104 F.3d 300, 1997 WL 7558, *2, 97 Daily Journal DAR 473 (9th Cir. 1997). A plaintiff can use a disparate

3

treatment theory or a disparate impact theory in establishing a claim. Id. Here, Plaintiffs do not allege that Defendants' actions were outwardly neutral but had a significant adverse effect on people situated in Plaintiffs' position; instead, they allege Defendants' discriminatory motive caused their actions. Plaintiffs state a disparate treatment claim. See Int'l Bhd of Teamsters v. United States, 431 U.S. 324, 335 n.15, 97 S. Ct. 1843, 1854 n.15, 52 L. Ed. 2d 396 (1977).

In *Pac. Shores Props., LLC v. City of Newport Beach*, 730 F.3d 1142, 1158 (9th. Cir. 2013), the Court aptly pointed out that proof of differential treatment was not required to prove a disparate treatment claim.  To that end, the *Pac. Shores* court held;

"Our cases clearly establish that plaintiffs who allege disparate treatment under statutory anti-discrimination laws need not demonstrate the existence of a similarly situated entity who or which was treated better than the plaintiffs in order to prevail. See, e.g., Budnick, 518 F.3d at 1114; McGinest v. GTE Serv. Corp., 360 F.3d 1103, 1122 (9th Cir. 2004) (same in Title VII context).Proving the existence of a similarly situated entity is only one way to survive summary judgment on a disparate treatment claim. See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973). A plaintiff does not, however, have to rely on the McDonnell Douglas approach to create a triable issue of fact regarding discriminatory intent in a disparate treatment case. See Costa v. Desert Palace, Inc., 299 F.3d 838, 855 (9th Cir. 2002) (en banc), aff'd, 539 U.S. 90, 123 S. Ct. 2148, 156 L. Ed. 2d 84 (2003). Instead, he may "simply produce direct or circumstantial evidence demonstrating that a discriminatory reason more likely than not motivated" the defendant and that the defendant's actions adversely affected the plaintiff in some way. McGinest, 360 F.3d at 1122; see also Trans World Airlines, Inc. v. Thurston, 469 U.S. 111, 121, 105 S.

4

Ct. 613, 83 L. Ed. 2d 523 (1985) ("[T]he McDonnell Douglas test is inapplicable where the plaintiff presents direct evidence of discrimination."); Lowe v. City of Monrovia, 775 F.2d 998, 1006-07 (9th Cir. 1985), amended on other grounds, 784 F.2d 1407 (9th Cir. 1986)."

5

**INSTRUCTION NO. 2**

A landlord has an affirmative duty to protect its tenants from known dangers, including persons (including tenants, as well as third-parties) with known violent propensities, and to protect the quiet enjoyment of all tenants.

*Authority: Barber v. Chang* (2007) 151 Cal.App.4th 1456, 1467 (landlord sued because tenant with known dangerous propensities shot a visitor).

**Plaintiffs' Objection to this Jury Instruction**:

There is no cause of action for beach of the covenant of quiet enjoyment.  To this end, the instruction is unnecessary.

There is no cause of action for beach of the covenant of quiet enjoyment.  To this end, the instruction is unnecessary.

As the court in *Mathews v. Arrow Wood, LLC.,* 2009 WL 8659593 (C.D. Cal. 2009), aptly pointed out, the desire to protect children cannot become the basis for overly-broad protective rules that prevent all children from playing.  The *Matthews* court held:

"Concerns that children will get hurt while playing outside, be it nicks, scratches, bumps or bruises, have been concerns dogging parents since the dawn of time. Were such ever-present, generalized concerns deemed sufficient in and of themselves to justify outdoor use restrictions to an apartment complex, there would

6

be little place left that such a rule would not be considered valid.   In short, the mantra of child safety cannot and is not sufficient to justify a restriction absent some showing that the particular concern captured by this rationale has a concrete connection to the particular area and activity sought to be restricted." *Id.* at 14-15.

Likewise, in *Bischoff v. Brittain*, *Bischoff v. Brittain*, 183 F. Supp. 3d 1080 (E.D. CA 2016), the court rejected an argument from the landlord that noise and liability concerns justified rules that limited the right of children to use common areas. The Court held:

" In their opposition, defendants contend the guidelines are justified to protect the safety and well-being of young children, to limit noise and disturbances to other residents, and to protect themselves from liability if the children are injured. Of these asserted justifications, only the first is permissible under the *Community House* standard; the other two justifications do not respond to legitimate safety concerns, and defendants have not shown that they otherwise benefit families with young children."

As the court in *Llanos v. Coehlo*, 24 F.Supp.2d 1052, 1060 (E.D. Cal. 1998), pointed out, "[A]s a general rule, safety judgments are for informed parents to make, not landlords."

The *Llanos* Court also pointed out that disparate treatment claims could be brought separately from disparate impact claims.  The Court held:

7

"FHA discrimination claims are analyzed in the same manner as Title VII discrimination claims. Gamble v. City of Escondido, 104 F.3d 300, 1997 WL 7558, *2, 97 Daily Journal DAR 473 (9th Cir. 1997). A plaintiff can use a disparate treatment theory or a disparate impact theory in establishing a claim. Id. Here, Plaintiffs do not allege that Defendants' actions were outwardly neutral but had a significant adverse effect on people situated in Plaintiffs' position; instead, they allege Defendants' discriminatory motive caused their actions. Plaintiffs state a disparate treatment claim. See Int'l Bhd of Teamsters v. United States, 431 U.S. 324, 335 n.15, 97 S. Ct. 1843, 1854 n.15, 52 L. Ed. 2d 396 (1977).

In *Pac. Shores Props., LLC v. City of Newport Beach*, 730 F.3d 1142, 1158 (9th. Cir. 2013), the Court aptly pointed out that proof of differential treatment was not required to prove a disparate treatment claim.  To that end, the *Pac. Shores* court held;"Our cases clearly establish that plaintiffs who allege disparate treatment under statutory anti-discrimination laws need not demonstrate the existence of a similarly situated entity who or which was treated better than the plaintiffs in order to prevail. See, e.g., Budnick, 518 F.3d at 1114; McGinest v. GTE Serv. Corp., 360 F.3d 1103, 1122 (9th Cir. 2004) (same in Title VII context).Proving the existence of a similarly situated entity is only one way to survive summary judgment on a disparate treatment claim. See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973). A plaintiff does not, however, have to rely on the McDonnell Douglas approach to create a triable issue of fact regarding

8

DISPUTED JURY INSTRUCTIONS

discriminatory intent in a disparate treatment case. See Costa v. Desert Palace, Inc., 299 F.3d 838, 855 (9th Cir. 2002) (en banc), aff'd, 539 U.S. 90, 123 S. Ct. 2148, 156 L. Ed. 2d 84 (2003). Instead, he may "simply produce direct or circumstantial evidence demonstrating that a discriminatory reason more likely than not motivated" the defendant and that the defendant's actions adversely affected the plaintiff in some way. McGinest, 360 F.3d at 1122; see also Trans World Airlines, Inc. v. Thurston, 469 U.S. 111, 121, 105 S. Ct. 613, 83 L. Ed. 2d 523 (1985) ("[T]he McDonnell Douglas test is inapplicable where the plaintiff presents direct evidence of discrimination."); Lowe v. City of Monrovia, 775 F.2d 998, 1006-07 (9th Cir. 1985), amended on other grounds, 784 F.2d 1407 (9th Cir. 1986)."

9

DISPUTED JURY INSTRUCTIONS

## INSTRUCTION NO. 3

In order to prevail on a Fair Housing Act Claim, a plaintiff must prove by a preponderance of the evidence that defendant violated the Fair Housing Act by showing that defendant's conduct actually or predictably had a substantial adverse impact against a protected class of which plaintiff claims to be a member.

***Authority:*** 42 U.S.C.A. §§ 1981, 1982; *Pfaff v. HUD*, 88 F.3D 739, 745 (9th Cir. 1996).

### <u>Plaintiffs' Objection to this Jury Instruction</u>:

42 U.S.C. §1981 & 1982 do not apply, as this is not a contract action.

Defendant's have cited *Pfaff v. HUD,* 88 F.3d 739, 745 (9th. Circ. 1996), for the proposition that plaintiffs must show that defendant's conduct "actually or predictably had a substantial adverse impact against a protected class of which plaintiff claims to be a member."  Defendant fails to realize that *Pfaff* dealt with a disparate *impact* claim, not a disparate *treatment* claim.  Herein, Plaintiffs are pursuing a theory based upon disparate *treatment,* not disparate impact.  As such, *Pfaff* is inapplicable.

In *Llanos v. Estate of Coelho*, 1997 U.S. Dist. LEXIS 23255 (E.D. CA 1997), the court held:

"FHA discrimination claims are analyzed in the same manner as Title VII discrimination claims. Gamble v. City of Escondido, 104 F.3d 300, 1997 WL 7558, *2, 97 Daily Journal DAR 473 (9th Cir. 1997). A plaintiff can use a disparate treatment theory or a disparate impact theory in establishing a claim. Id. Here,

1   Plaintiffs do not allege that Defendants' actions were outwardly neutral but had a

2   significant adverse effect on people situated in Plaintiffs' position; instead, they

3   allege Defendants' discriminatory motive caused their actions. Plaintiffs state a

4   disparate treatment claim. See Int'l Bhd of Teamsters v. United States, 431 U.S.

5   324, 335 n.15, 97 S. Ct. 1843, 1854 n.15, 52 L. Ed. 2d 396 (1977).

6       In *Pac. Shores Props., LLC v. City of Newport Beach*, 730 F.3d 1142, 1158

7   (9th. Cir. 2013), the Court aptly pointed out that proof of differential treatment was

8   not required to prove a disparate treatment claim.  To that end, the *Pac. Shores*

9   court held;

10      "Our cases clearly establish that plaintiffs who allege disparate treatment

11  under statutory anti-discrimination laws need not demonstrate the existence of a

12  similarly situated entity who or which was treated better than the plaintiffs in order

13  to prevail. See, e.g., Budnick, 518 F.3d at 1114; McGinest v. GTE Serv. Corp., 360

14  F.3d 1103, 1122 (9th Cir. 2004) (same in Title VII context).Proving the existence of

15  a similarly situated entity is only one way to survive summary judgment on a

16  disparate treatment claim. See McDonnell Douglas Corp. v. Green, 411 U.S. 792,

17  93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973). A plaintiff does not, however, have to rely

18  on the McDonnell Douglas approach to create a triable issue of fact regarding

19  discriminatory intent in a disparate treatment case. See Costa v. Desert Palace, Inc.,

20  299 F.3d 838, 855 (9th Cir. 2002) (en banc), aff'd, 539 U.S. 90, 123 S. Ct. 2148,

21  156 L. Ed. 2d 84 (2003). Instead, he may "simply produce direct or circumstantial

22  evidence demonstrating that a discriminatory reason more likely than not motivated"

23  the defendant and that the defendant's actions adversely affected the plaintiff in

24  some way. McGinest, 360 F.3d at 1122; see also Trans World Airlines, Inc. v.

25

26

27

28

11

DISPUTED JURY INSTRUCTIONS

Thurston, 469 U.S. 111, 121, 105 S. Ct. 613, 83 L. Ed. 2d 523 (1985) ("[T]he McDonnell Douglas test is inapplicable where the plaintiff presents direct evidence of discrimination."); Lowe v. City of Monrovia, 775 F.2d 998, 1006-07 (9th Cir. 1985), amended on other grounds, 784 F.2d 1407 (9th Cir. 1986)."

In *Llanos v. Estate of Coelho*, 1997 U.S. Dist. LEXIS 23255 (E.D. CA 1997), the court held:

12

DISPUTED JURY INSTRUCTIONS

1     "FHA discrimination claims are analyzed in the same manner as Title VII

2  discrimination claims. Gamble v. City of Escondido, 104 F.3d 300, 1997 WL 7558,

3  *2, 97 Daily Journal DAR 473 (9th Cir. 1997). A plaintiff can use a disparate

4  treatment theory or a disparate impact theory in establishing a claim. Id. Here,

5  Plaintiffs do not allege that Defendants' actions were outwardly neutral but had a

6  significant adverse effect on people situated in Plaintiffs' position; instead, they allege

7  Defendants' discriminatory motive caused their actions. Plaintiffs state a disparate

8  treatment claim. See Int'l Bhd of Teamsters v. United States, 431 U.S. 324, 335 n.15,

9  97 S. Ct. 1843, 1854 n.15, 52 L. Ed. 2d 396 (1977).

10    Be that as it may, if the court is to adopt a ruling CACI Jury Instruction 430 is

11 much more on point:

12    "A substantial factor in causing harm is a factor that a reasonable person would

13 consider to have contributed to the harm. It must be more than a remote or trivial

14 factor. It does not have to be the only cause of the harm."

15    As it stands, a prima facie case of housing discrimination alleging intentional

16 discrimination based on familial status requires plaintiff to show that familial status

17 was motivating factor, though not necessarily the sole motivating factor, in allegedly

18 violative action. *U.S. v. Branella*, D.N.J.1997, 972 F.Supp. 294 (USDC New Jersey

19 1997).

20

21

22

23

24

25

26

27

28

13

**INSTRUCTION NO. 4**

"Familial status" means "one or more individuals (who have not attained the age of 18 years) being domiciled with ... (1) a parent or another person having legal custody of such individual or individuals; or (2) the designee of such parent or other person having such custody, with the written permission of such parent or other person," and further states "the protections afforded against discrimination on the basis of familial status shall apply to any person who is pregnant or is in the process of securing legal custody of any individual who has not attained the age of 18 years." The law does not provide that disparate treatment of children would, by implication, necessarily amount to one directed at families.

*Authority:* 42 U.S.C. § 3602(k)

**Plaintiffs' Objection to this Jury Instruction**:

Defendant's definition of "familial status" is too restrictive, as defined by case law.

Defendant seems to be taking aim at the fact that Plaintiff Francisco Garcia Quiroz is suing due to the injury he suffered when his visiting nephews were instructed not to play. On its face, it is unclear whether 42 U.S.C. §3602(k) applies for two reasons:

First, the statute refers to a parent or other person "having legal custody." 42 U.S.C §3602 makes no attempt to define what is meant by "having legal custody."

Second, 42 U.S.C. §3602(k) seems to suggest that the minor in question must be "domiciled" at the subject property, to have standing to sue. Unfortunately, 42 U.S.C §3602 makes no attempt to define what the word "domiciled" means.

14

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Fortunately, while the statute is somewhat narrowly drawn, case law interpreting it is broad. The United States Supreme Court has held that a plaintiff need not be a member of a protected class to bring suit under the Fair Housing Act, so long as the plaintiff suffered an actual injury due to the defendant's alleged discriminatory conduct. *Gladstone, Realtors v.. Vill. of Bellwood,* 441 U.S. 91, 103 n. 9; 99 S.Ct. 1601, 60 L.Ed.2d 66 (1979).  The Fair Housing Act's definition of an "aggrieved person" is an extremely broad definition.  It includes anybody who "claims to have been injured by a discriminatory housing practice." 42 U.S.C. §3602(i)(1).  A "discriminatory housing practice" means any act that is unlawful under §3604, §3605, §3606, or §3617.  In 1972, the United States Supreme Court held this language reflected "a congressional intention to define standing as broadly as is permitted by Article III of the Constitution." *Trafficante v. Metropolitan Life Insurance Co.,* 409 U.S. 205, 209 (1972).

In *Moua v. City of Chico,* 324 F Supp 2d 1132 (2004, ED Cal), the court ruled that non-residents of an apartment complex had standing to sue if they could show that they suffered injury as a result of the discriminatory conduct.  Therein, non-resident Plaintiffs sued for a violation of the Fair Housing Act, on the claim that they were prohibited from visiting a resident in the complex.  The court held that such individuals had standing to sue under the fair housing act *even though* neither Plaintiff lived at the complex ("Vue and Lee have standing even though neither lived at Orchard Court" *Id.* at 1142).   The court focused on injury, not on tenancy.

The *Moua* court also favorably cited the case of  *San Pedro Hotel Co. v. City of Los Angeles*, 159 F.3d 470 (9th Cir.1998), to support its position that non-residents had standing to sue if they were injured by the discrimination.  In *San Pedro Hotel*

15

*Co.*, the Ninth Circuit held that _[U]nder the Act, any person harmed by discrimination, whether or not the target of the discrimination, can sue to recover for his or her own injury. This is true, for example, even where no housing has actually been denied to persons protected under the Act._ *Id.* at 475.

The *Moua* court cited two other cases to support its position that non-residents had standing to sue, *Smith v. Stechel,* 510 F.2d 1162, 1164 (9th Cir.1975) (real estate agent fired for renting apartments to minorities permitted to maintain FHA claim); *Harris v. Itzhaki,* 183 F.3d 1043, 1050 (upholding FHA standing of minority tenant based on apartment owners' discriminatory treatment of unrelated minority rental tester).

In *Gonzalez v. Diversified Real Prop. Mgmt. & Bus. Servs.*, 2010 U.S. Dist. LEXIS 146106 (C.D. CA 201), the court expressly rejected a motion for summary judgment, which sought to hold that visiting grandchildren to the complex had no standing to bring a claim.

The *Gonzalez* court held:

"At first glance, it is hard  [*5] to see how Campos or her children could have standing to sue for violations of the FHA where they were mere visitors to the Complex and were not themselves discriminated against in the "sale or rental of a dwelling." However, as the Ninth Circuit has noted:

The Supreme Court has long held that claims brought under the Act are to be judged under a very liberal standing requirement. Unlike actions brought under other provisions of civil rights law, the plaintiff need not allege that he or she was a victim of discrimination. Rather, the sole requirement for standing under the Act is the

16

"[Article] III minima of injury in fact." To meet this requirement, a plaintiff need only allege "that as a result of the defendant's [discriminatory conduct] he has suffered a distinct and palpable injury."

In *Gorski v Troy,* 929 F2d 1183 (1991, CA7 Ill), the court found that an allegation that tenants were evicted from their apartment because of their attempt to qualify as foster parents and their intent to bring foster child into apartment was sufficient to give tenants standing as persons injured by discriminatory housing practice under 42 USCS § 3602, even though tenants were not yet in process of obtaining legal custody of child at time of eviction, where landlord's actions were discriminatory in that they expressed preference for tenants on basis of familial status in violation of § 3604(c), and landlord retaliated against tenants when they attempted to have discriminatory policy changed.

In short, the definition of "Familial Status" proposed by Plaintiffs is much more in line with case law, than is Defendant's proposed instruction no. 11.

On a separate note, Defendant's instruction also states "The law does not provide that disparate treatment of children would, by implication, necessarily amount to one directed at families." This statement is contrary to case law.  In *Mathews v. Arrow Wood LLC,* 2009 WL 8659593 (C.D. CA. 2009), the Court held,"Disparate treatment of children would, by implication, necessarily amount to one directed at families. See Fair Housing Congress v. Weber, 993 F.Supp. 1286, 1290 (C.D. Cal. 1997) (noting that FHA's prohibition of discrimination on the basis of familial status extends to "discrimination against families with children")."

17

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

DISPUTED JURY INSTRUCTIONS

**INSTRUCTION NO. 5**

A policy requiring supervision of children is legally justified when it is not employed to discriminate on the basis of familial status but, rather, to benefit the protected class and to address legitimate safety concerns.

**Authority:** *Community House, Inc. v. City of Boise,* 490 F.3d 1041, 1050 (9th Cir. 2007 ([1] 'the restriction benefits the protected class,' or when [2] 'it responds to legitimate safety concerns raised by the individuals affected, rather than being based on stereotypes.").

**<u>Plaintiffs' Objection to this Jury Instruction</u>:**

Defendant's citation to *Community House, Inc. v. City of Boise*, 490 F.3d 1041, 1050 (9th Cir. 2007), is misplaced, as *Community House* dealt with facially discriminatory rules.  Herein, there are no facially discriminatory rules at issue.

In regard to supervision rules, they are largely illegal.

In *U.S. v. Plaza Mobile Estates*, 273 F.Supp.2d 1084, 1091 (C.D. Cal. 2003), the court found that a rule prohibiting children walking around the mobile home park without adult supervision was overly broad regardless of the concern for the children's safety.  *Plaza Mobile*, 273 F.Supp.2d at 1092.

In *Pack v. Fort Washington II*, 689 F.Supp.2d. 1237 (2009)(E.D.Cal. 2009), the court found that it was illegal to have rule which required the supervision of children 10-and-under in the common area.  *Id.* at 1244.

In *Iniestra v. Cliff Warren Investments, Inc.,* 2012 WL 3580533 (C.D. Calif. 2012),the court found that a rule which stated "Children on the premises are to be supervised by a responsible adult at all times" resulted in "explicit" discrimination

DISPUTED JURY INSTRUCTIONS

against children.   *Id.*   The court further held that a memo sent to tenants (Entitled "Unsupervised Children Memo"), which required children under 10-years-old to be supervised, was likewise facially discriminatory.   The court found that since the rules "enforce some limitation on the children's use of apartment facilities" then such rules resulted in a violation of 42 U.S.C. §3604(c).[1]   *Id.*

In *Blomgren v. Ogle*, 850 F.Supp. 1427, 1438 fn 19 (E.D. Wash. 1993), the court noted:

"[A]s a matter of law, landowners have legitimate concerns about the supervision of their tenants' children.   A parent's failure to supervise a child impacts the rights of the landowner in cases of liability causing acts.   More importantly, consider for example, the possible tragic consequences to the child who might be trapped in a fire because no adult is close enough to lead the child to safety. Common sense also dictates parents are responsible for supervising the activities of their young children without the need for a written rule.   Just as one who enters a national forest does not require a written rule stating it is unlawful to start a forest fire or one entering the Redwood forest does not require a written rule about cutting the old growth, neither does a parent need to be instructed by apartment rules not to leave a young child unsupervised." ***Id.*** at 1438 fn 19.

---

[1]   The court in *Iniestra* found that a violation of Federal Fair Housing claims was, likewise, a violation of California FEHA claims simultaneously brought.   *Id.* ("Because FEHA is based on the Fair Housing Act, liability under the Fair Housing Act also supports liability under FEHA" (citation omitted)).

DISPUTED JURY INSTRUCTIONS

In addition to the illegality of the supervision rule, the standard proposed by Defendant's jury instruction (i.e., benefit the protected class and address legitimate safety concerns), is inappropriate for a disparate treatment case.

In *Bischoff v. Brittain*, *Bischoff v. Brittain*, 2016 U.S. Dist. LEXIS 126685 (E.D. CA 2016), the Court discussed the handling of disparate *treatment* cases.  The *Bischoff* Court held:

"A plaintiff may bring a claim under § 3604(b) under either a disparate treatment or disparate impact theory. Budnick v. Town of Carefree, 518 F.3d 1109, 1114 (9th Cir. 2008) (courts apply Title VII discrimination analysis in cases brought under the FHA). Plaintiffs here rely on the disparate treatment theory. (ECF 4-2 at 8 ("plaintiffs contend that defendants have violated the [FHA] through disparate treatment based on familial status in relation to housing facilities and common areas . . . .").) Accordingly, this court's analysis is limited to disparate treatment. See Iniestra v. Cliff Warren Investments, Inc., 886 F. Supp. 2d 1161, 1166 (C.D. Cal. 2012) (where the plaintiffs argued under only a disparate treatment theory, the court "follow[ed] the briefing submitted by [the] [p]laintiffs and limit[ed] itself to a disparate treatment analysis. Also, because [p]laintiffs successfully ma[de] a showing under disparate treatment, there [was] no need to delve into a disparate impact analysis").

Cases relying on disparate treatment generally are analyzed under the burden-shifting framework articulated in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973). Under that framework, a plaintiff has the initial burden of establishing a prima facie case of housing discrimination. Harris v. Itzhaki, 183 F.3d 1043, 1051 (9th Cir. 1999). The elements of a prima facie

21

case under the McDonnell Douglas framework vary depending on the facts of each case. See id. Adapted to the instant case, the elements are: (1) plaintiffs' rights are protected under the FHA; and (2) plaintiffs have suffered an injury because of defendants' discriminatory acts. Id. Once a plaintiff establishes a prima facie case, a presumption of discrimination arises. Id. Then, the burden shifts to defendants "to articulate some legitimate, nondiscriminatory reason for the action." Id. "To accomplish this, the defendant is only required to set forth a legally sufficient explanation." Id. After a defendant asserts a legitimate reason, the plaintiffs must then show that the articulated reason is pretextual. Id."

However, "a plaintiff can also establish a prima facie case of disparate treatment without satisfying the McDonnell Douglas test." Lowe v. City of Monrovia, 775 F.2d 998, 1006 (9th Cir. 1985) amended, 784 F.2d 1407 (9th Cir. 1986). Meaning, "[i]n lieu of satisfying the elements of a prima facie case, a plaintiff may also simply produce direct or circumstantial evidence demonstrating that a discriminatory reason more likely than not motivated the challenged decision." Budnick, 518 F.3d at 1114. Yet, under either method of establishing a prima facie case, "the plaintiff must counter the defendant's explanation with some evidence suggesting that the challenged action was due in part or whole to discriminatory intent." Id.'"

In *Bischoff*, the court rejected Defendant landlord's reasons for over-reaching rules.  The Court held:

"The court next considered defendants' justifications for the discriminatory policy. Only one of defendants' purported justifications was permissible under Community House: that the policy protected the safety and well-being of young

22

children. Prev. Order 13. The only evidence defendants offered to support this justification was Brittain's declaration. Id. Brittain generally identified the following safety hazards: the street adjacent to the complex, tables and trees in the courtyard common area, outdoor grilling equipment, and a fenced swimming pool. Id. at 13-14 (quoting Brittain Decl. I ¶ 6). She noted that one three-year-old child had drowned at a different apartment complex in August 2014 while the child was unsupervised. Brittain Decl. I ¶ 6. After considering this evidence and the relevant case law, the court determined that defendants' safety concerns "[were] based largely on unfounded speculation," and that their policy "[was] not adequately tailored to respond to those purported concerns." Prev. Order 14. The court concluded that defendants had not created a triable dispute as to whether the facial discrimination was justified under the FHA. Id. at 13-15. In addition to finding Brittain Commercial liable under § 3604(b) for its policy, the court also found RZM vicariously liable as the owner of Birchwood Gardens. Id. at 15-16. Accordingly, the court granted Project Sentinel's motion for partial summary judgment."

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**INSTRUCTION NO. 6**

In order to recover damages, Plaintiffs must prove by a preponderance of the evidence that they suffered a "distinct and palpable injury" and "substantial adverse impact" so as to demonstrate disparate treatment in the enforcement of the policies.

***Authority*** *Harris v. Ithzaki*, 183 F.3d 1043, 1051 (9th Cir. 1999); 42 U.S.C. 3601, et seq.

**Plaintiffs' Objection to this Jury Instruction**:

The case cited by Defendant, *Harris v. Ithzaki*, F.3d 1043, 1051 (9th Cir. 1999), says nothing about damages as it would relate to the current case in any fashion.

Moreover, Defendant proffers the incorrect standard. Damages in a fair housing case have been used to compensate plaintiffs for nonmonetary injuries such as humiliation, embarrassment, and emotional distress. *Green v. Rancho Santa Fe Mortgage Co.*, 33 Cal.Rptr. 706, 714 (1994). The Supreme Court in *U.S. v. Burke*, 504 U.S. 229 (1992), has ruled that victims of discrimination could recover damages for injuries such as _inconvenience" and "loss of enjoyment of life." *Id.* at 241. Moreover, court's readily acknowledge that even if no damages are established, a plaintiff is still entitled to (at the minimum) an award of nominal damages for the value of a lost constitutional right. *Memphis Community School District v. Stachura*, 477 U.S. 299 (1986). *See also Maney v. Brinkley Mun. Waterworks & Sewer Dept.*, 802 F.2d 1073, 1076 (8th Cir. 1986) (Nominal damages are appropriately awarded on a claim of racial discrimination in violation of Title VII *even if* no actual damages are shown). If no emotional distress damages are awarded, plaintiff is entitled to nominal

24

damages not to exceed one dollar if he has been the victim of intentional racial discrimination. *Irby v. Sullivan*, 737 F.2d 1418, 1433 n.30 (5th Cir. 1984). See also *Carey et al. v. Piphus et al.*, 435 U.S. 247, 266-267 (1978) ("Plaintiffs entitled to recover "nominal damages not to exceed one dollar" for denial of procedural due process rights, without proof of actual injury).

There is no case that suggests that a "substantial adverse impact" must occur before damages can be awarded.

DISPUTED JURY INSTRUCTIONS

# INSTRUCTION NO. 7

To "establish by the preponderance of the evidence" means to prove that something is more likely so than it is not so. In other words, a preponderance of the evidence in the case means such evidence as, when considered and compared to that opposed to it, has more convincing force, and produces in your mind a belief that what is sought to be proved is more likely true than not true.

In determining whether any fact in issue has been proved by a preponderance of the evidence in the case, you may, unless otherwise instructed, consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them.

***Authorities.*** See *Williams v. Matthews Co.*, 499 F.2d 819, 826 (8th Cir.), cert. denied, 419 U.S. 1021, 95 S.Ct. 495, 42 L.Ed.2d 294, and 419 U.S. 1027, 95 S.Ct. 507, 42 L.Ed.2d 302 (1974) (when plaintiff makes out a prima facie case of housing discrimination, burden shifts to defendant to articulate some legitimate non-discriminatory reason for plaintiff's rejection).

## **Plaintiffs' Objection to this Jury Instruction**:

Plaintiffs have no objection to this jury instruction.

## INSTRUCTION NO. 8

If, after considering plaintiff's evidence and defendant's rebuttal of that evidence, you find plaintiff has established each and every element of plaintiff's claim, only then should you concern yourselves with the defenses offered by defendant.

With regard to any of defendant's defenses, remember that plaintiff must disprove the defense by a preponderance of the evidence. In other words, defendant establishes the defense unless you find the evidence that opposes the existence of that defense has more convincing force to you than the evidence that supports it.

If you find plaintiff has successfully rebutted the defense, then you must find for plaintiff. If you find defendant has established defendant's defense, then you must find for defendant.

*Authorities.* See *Williams v. Matthews Co.*, 499 F.2d 819, 826 (8th Cir.), cert. denied, 419 U.S. 1021, 95 S.Ct. 495, 42 L.Ed.2d 294, and 419 U.S. 1027, 95 S.Ct. 507, 42 L.Ed.2d 302 (1974) (when plaintiff makes out a prima facie case of housing discrimination, burden shifts to defendant to articulate some legitimate non-discriminatory reason for plaintiff's rejection).

**Plaintiffs' Objection to this Jury Instruction**:

The instruction is too confusing.

In addition, not all claims require the *McDonnell Douglas* burden shifting analysis.  In *Pac. Shores Props., LLC v. City of Newport Beach*, 730 F.3d 1142, 1158 (9th. Cir. 2013), the Court aptly pointed out that proof of differential treatment was not required to prove a disparate treatment claim.  To that end, the *Pac. Shores* court

held;

"Our cases clearly establish that plaintiffs who allege disparate treatment under statutory anti-discrimination laws need not demonstrate the existence of a similarly situated entity who or which was treated better than the plaintiffs in order to prevail. See, e.g., Budnick, 518 F.3d at 1114; McGinest v. GTE Serv. Corp., 360 F.3d 1103, 1122 (9th Cir. 2004) (same in Title VII context).Proving the existence of a similarly situated entity is only one way to survive summary judgment on a disparate treatment claim. See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973). A plaintiff does not, however, have to rely on the McDonnell Douglas approach to create a triable issue of fact regarding discriminatory intent in a disparate treatment case. See Costa v. Desert Palace, Inc., 299 F.3d 838, 855 (9th Cir. 2002) (en banc), aff'd, 539 U.S. 90, 123 S. Ct. 2148, 156 L. Ed. 2d 84 (2003). Instead, he may "simply produce direct or circumstantial evidence demonstrating that a discriminatory reason more likely than not motivated" the defendant and that the defendant's actions adversely affected the plaintiff in some way. McGinest, 360 F.3d at 1122; see also Trans World Airlines, Inc. v. Thurston, 469 U.S. 111, 121, 105 S. Ct. 613, 83 L. Ed. 2d 523 (1985) ("[T]he McDonnell Douglas test is inapplicable where the plaintiff presents direct evidence of discrimination."); Lowe v. City of Monrovia, 775 F.2d 998, 1006-07 (9th Cir. 1985), amended on other grounds, 784 F.2d 1407 (9th Cir. 1986)."

DISPUTED JURY INSTRUCTIONS

**INSTRUCTION NO. 9**

If you determine plaintiff proved that plaintiff's membership in a protected class was a factor motivating or playing a part in defendant's decision not to allow equal use of any aspect of a dwelling to plaintiff, then you must consider any other reason given by the defendant for its decision.

***Authorities.*** See *Williams v. Matthews Co.*, 499 F.2d 819, 826 (8th Cir.), cert. denied, 419 U.S. 1021, 95 S.Ct. 495, 42 L.Ed.2d 294, and 419 U.S. 1027, 95 S.Ct. 507, 42 L.Ed.2d 302 (1974) (when plaintiff makes out a prima facie case of housing discrimination, burden shifts to defendant to articulate some legitimate non-discriminatory reason for plaintiff's rejection).

**<u>Plaintiffs' Objection to this Jury Instruction</u>**:

This instruction is incorrect, as it is too confusing.  In addition, the instruction seems to suggest that, so long as Defendant has a good reason, it may discriminate.

In addition, Defendant cites *Williams v. Matthews Co.*, which is nothing more than a case that cited *McDonnell Douglas* and its burden shifting standard.  In *Sanghvi v. City of Claremont*, 328 F.3d 532 (9th Cir. 2003), the Court rejected a reading of the *McDonnell Douglas* burden-shifting standard to a jury.  The *Sanghvi* court held:

"Having considered the views and observations of this and other circuits, we conclude that it is error to charge the jury with the elements of the McDonnell Douglas prima facie case. The technical elements of the presumptions and shifting burdens have significant potential to confuse juries. See Costa, 299 F.3d at 855.

Moreover, "at [the jury] stage, the framework unnecessarily evades the ultimate

29

question of discrimination vel non." Id. at 855-56, quoting Aikens, 460 U.S. at 714. Instead of burdening the jury with the details of a framework designed to allocate burdens and promote the orderly presentation of evidence, district courts should focus the fact finders on the one essential question: whether the plaintiff is a victim of intentional discrimination. Aikens, 460 U.S. at 716; Gehring, 43 F.3d at 343."

30

DISPUTED JURY INSTRUCTIONS

## INSTRUCTION NO. 10

If you determine defendant showed that it would have reached the same decision regardless of plaintiff's membership in a protected class, then you must decide in favor of defendant.

**Authorities.** See *Robinson v. 12 Lofts Realty, Inc.*, 610 F.2d 1032, 1039–40 (2d Cir.1979); *United States v. City of Black Jack*, 508 F.2d 1179, 1187–88 (8th Cir.1974), cert. denied, 422 U.S. 1042, 95 S.Ct. 2656, 45 L.Ed.2d 694 (1975).

**<u>Plaintiffs' Objection to this Jury Instruction</u>**:

The instruction is too confusing.   Moreover, the cases cited by Defendant are inapplicable to their argument.

Cases applicable to Plaintiffs' position are as follows:

*U.S. v. Branella*, D.N.J.1997, 972 F.Supp. 294 (USDC New Jersey 1997) ( To that end, a case of intentional discrimination requires the plaintiff to show, inter alia, that familial status was a motivating factor (though not necessarily the sole motivating factor) in the allegedly violative action. See Robinson v. 12 Lofts Realty, Inc., 610 F.2d 1032, 1042 (2d Cir.1979) (analogous race discrimination claim), cited approvingly in Doe, 892 F.2d at 323.").

*Robinson v. 12 Lofts Realty, Inc.*, C.A.2 (N.Y.) 1979, 610 F.2d 1032 ("Race need not be sole motivating factor in denial that has discriminatory effect in order for plaintiff to succeed in claim under Fair Housing Act; denial violates statute if race is even one of motivating factors. ").

31

**INSTRUCTION NO. 11**

If defendant establishes by a preponderance of the evidence that plaintiff could have reduced the harm done to plaintiff but failed to do so, plaintiff is entitled only to damages sufficient to compensate for the injury that plaintiff would have suffered had plaintiff taken appropriate action to reduce the harm.

*Authorities.* See *Meyers. v. City of Cincinnati*, 14 F.3d 1115, 1119 (6th Cir.1994); *Fleming v. County of Kane*, 898 F.2d 553, 561 (7th Cir.1990). A prima facie showing of disparate impact in a Fair Housing Act suit cannot be overcome by the defendant's simply showing some legitimate purpose; the defendant must prove a business necessity sufficiently compelling to justify the challenged practice. *Betsey v. Turtle Creek Associates*, 736 F.2d 983, 988–89 (4th Cir.1984). Accord *Davis v. Richmond, Fredericksburg & Potomac Ry.*, 803 F.2d 1322, 1328 (4th Cir.1986). *Contra Boyd v. Lefrak Organization*, 509 F.2d 1110, 1114 (2d Cir.), cert. denied, 423 U.S. 896, 96 S.Ct. 197, 46 L.Ed.2d 129 (1975) (rejecting use of business necessity test in Fair Housing Act action). But see *Huntington Branch, NAACP v. Town of Huntington*, 844 F.2d 926, 934 (2d Cir.), judgment affirmed in part, 488 U.S. 15, 109 S.Ct. 276, 102 L.Ed.2d 180 (1988) (per curiam) ("even if the views expressed in Lefrak still apply in a Title VIII case against a private defendant, a matter of considerable uncertainty, the disparate impact approach of Title VII cases is fully applicable to this Title VIII case brought against a public defendant").

**Plaintiffs' Objection to this Jury Instruction**:

It is hard to comprehend how this instruction could apply to this case. The instruction appears to suggest that Plaintiffs had a duty to mitigate damages.

Tyus v. Urban Search Management, 102 F.3d 256 (7th Cir. 1996), the Court

held:

"While mitigation may be appropriate for cases in which a person is denied housing and must find alternative housing, see, e.g., Miller v. Apartments & Homes of N.J., Inc., 646 F.2d 101, 111-12 (3d Cir. 1981); Young v. Parkland Village, Inc., 460 F. Supp. 67, 71 (D. Md. 1978), it is not required for intangible losses or organizational claims, both of which are recoverable in Fair Housing Act cases. See, e.g., United States v. Balistrieri, 981 F.2d 916, 933 (7th Cir. 1992), cert. denied, 510 U.S. 812, 114 S. Ct. 58, 126 L. Ed. 2d 28 (1993); Ragin v. Harry Macklowe Real Estate Co., 6 F.3d 898, 904-05 (2d Cir. 1993). Thus, the very essence of the court's instruction--that these plaintiffs had a duty to avoid their damages--was wrong. The Fair Housing Act does not require notification prior to filing a suit, nor does it require a suit to be filed upon viewing or hearing the first discriminatory ad."

Herein, Plaintiffs alleged that their children were subjected to discriminatory harassment by the resident manager.  There is no conceivable way that they could have mitigated this damage, other than filing the current lawsuit.  As such, the proposed instruction is inappropriate.

33

## **4.13 ADVERSE INTEREST EXCEPTION**

If you find that Fernando Ramirez or Yessenia Vasquez were acting solely for their own purposes or those of a third party, then Fernando Ramirez's and Yessenia Vasquez's acts or omissions are not considered the acts or omissions of defendant Diversified Holdings, LLC.

However, if you find that defendant Diversified Holdings ratified or knowingly received a benefit from the acts or omissions of Fernando Ramirez or Yessenia Vasquez, then you may find defendant Diversified Holdings liable if you find that Fernando Ramirez or Yessenia Vasquez acted within their authority.

**Authority:** *Fair Housing Congress v. Weber,* 993 F.Supp. 1286, 1294 (C.D. Cal. 1997); *Phiffer v. Proud Parrot Motor Hotel, Inc.*, 648 F.2d 548, 552 (9th Cir. 1980); *Walker v. Crigler,* 976 F.2d 900, 904-905 (4th Cir. 1992); *Hamilton v. Svatik*, 779 F.2d 383, 388 (7th Cir. 1985); *Northside Realty Ass'n. v. U.S.*, 605 F.2d 1348, 1353-54 (5th Cir. 1979); *Marr v. Rife*, 503 F.2d 735, 740-42 (6th Cir. 1974); *People Helpers, Inc. v. City of Richmond*, No. 91-682, 1992 U.S. Lexis at 25-25 (E.D. Va. April 13, 1992); *Davis v. Mansards,* 597 F.Supp. 334, 344 (N.D. Ind. 1984); *U.S. v. Youritan Constr. Co.* 370 F.Supp. 643, 649 (N.D. Cal. 1973), *aff'd in part and remanded in part,* 509 F.2d 623 (9th Cir. 1975). *Fair Housing Congress v. Weber*, 993 F.Supp. 1286, 1294 (C.D. Cal. 1997)( "Moreover, a property owner is liable for the discriminatory acts of employees even if the property owner instructed his employees not to discriminate. Walker v. Crigler, 976 F.2d 900, 904–5 (4th Cir.1992)").

1

2

**<u>Plaintiffs' Objection:</u>**

3

The adverse interest exception is narrow and generally requires "an agent to

4

completely abandon the principal's interests and act entirely for his own purposes."

5

Cement & Concrete Workers Dist. Council Pension Fund v. Hewlett Packard Co.,

6

964 F. Supp. 2d 1128, 1144-45 (N.D. Cal. 2013) (quoting USACM Liquidating Trust

7

v. Deloitte & Touche LLP, 764 F. Supp. 2d 1210, 1218 (D.Nev. 2011)).

8

9

Plaintiffs' proposed instuctions No. 17 is much more concise and accurate:

10

"Property owners are vicariously liable for the discriminatory acts of their

11

representatives.  Moreover, a property owner is liable for the discriminatory acts of a

12

fellow owner even if the property owner instructed his or her fellow owner not to

13

discriminate."

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DISPUTED JURY INSTRUCTIONS

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## 5.3 DAMAGES—MITIGATION

The plaintiffs each have a duty to use reasonable efforts to mitigate damages. To mitigate means to avoid or reduce damages. The defendant has the burden of proving by a preponderance of the evidence: 1. that the plaintiff failed to use reasonable efforts to mitigate damages; and 2. the amount by which damages would have been mitigated.

**Plaintiffs' Objection:**

Tyus v. Urban Search Management, 102 F.3d 256 (7th Cir. 1996), the Court held:

"While mitigation may be appropriate for cases in which a person is denied housing and must find alternative housing, see, e.g., Miller v. Apartments & Homes of N.J., Inc., 646 F.2d 101, 111-12 (3d Cir. 1981); Young v. Parkland Village, Inc., 460 F. Supp. 67, 71 (D. Md. 1978), it is not required for intangible losses or organizational claims, both of which are recoverable in Fair Housing Act cases. See, e.g., United States v. Balistrieri, 981 F.2d 916, 933 (7th Cir. 1992), cert. denied, 510 U.S. 812, 114 S. Ct. 58, 126 L. Ed. 2d 28 (1993); Ragin v. Harry Macklowe Real Estate Co., 6 F.3d 898, 904-05 (2d Cir. 1993). Thus, the very essence of the court's instruction--that these plaintiffs had a duty to avoid their damages--was wrong. The Fair Housing Act does not require notification prior to filing a suit, nor does it require a suit to be filed upon viewing or hearing the first discriminatory ad."

Herein, Plaintiffs alleged that their children were subjected to discriminatory harassment by the resident manager. There is no conceivable way that they could

have mitigated this damage, other than filing the current lawsuit.  As such, the proposed instruction is inappropriate.

37

1

2

**413 Custom or Practice**

You may consider customs or practices in the community in deciding whether Defendant Diversified Holdings acted reasonably. Customs and practices do not necessarily determine what a reasonable person would have done in Diversified Holdings' situation. They are only factors for you to consider.

Following a custom or practice does not excuse conduct that is unreasonable. You should consider whether the custom or practice itself is reasonable.

**Plaintiffs' Objection:**

This instruction has no application to the current case, and is confusing.

THE SAFARIAN FIRM, APC.

DATED: January 7, 2018        By: /s/ Harry A. Safarian
                                  Harry A. Safarian
                              Attorneys for Defendants,
                              DIVERSIFIED HOLDINGS, LLC dba
                              REAL ESTATE CONNECTION

Dated: January 7, 2018        LAW OFFICES OF CRAIG P. FAGAN

                              By: /s/Craig P. Fagan
                              Craig P. Fagan
                              Attorneys for all Plaintiffs

DISPUTED JURY INSTRUCTIONS